# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARCO MICHALSKI,
    *Plaintiff,*

    v.

SCOTT ERFE, ET AL.
    *Defendants.*

No. 3:17-cv-2074 (VAB)

## <u>INITIAL REVIEW ORDER AND RULING ON MOTIONS</u>

Marco Michalski ("Plaintiff"), currently incarcerated at Osborn Correctional Institution in Somers, Connecticut, filed a lawsuit while he was incarcerated at Cheshire Correctional Institute in Cheshire, Connecticut, against five individuals in their individual and official capacities who were associated with the Connecticut Department of Correction. Complaint, ECF No. 1 (Dec. 13, 2017). Mr. Michalski asserted claims under the U.S. Constitution's Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. *Id.*

Mr. Michalski has since moved for leave to amend his Complaint three times to change claims and add defendants. Mot. to Amend/Correct, ECF No. 7 (Jan. 29, 2018); Mot. to Amend/Correct, ECF No. 19 (Apr. 18, 2019); Mot. to Amend/Correct, ECF No. 25 (Sept. 30, 2019). He has also filed numerous other motions, including a motion for a temporary restraining order and preliminary injunction. Mot. for Temp. Restraining Order and Prelim. Inj., ECF No. 20 (May 29, 2019) ("Mot. TRO & Prelim. Inj.").

This Order addresses multiple motions filed by Mr. Michalski and includes an Initial Review Order on his Fourth Amended Complaint.

1

For the reasons set forth below, Mr. Michalski's motion for leave to file a Fourth Amended Complaint is **GRANTED**.

Mr. Michalski's claims under the Eighth Amendment for monetary damages against Warden Scott Erfe, Commissioner Rollin Cook,[1] Dr. Bruce Lichtenstein, Ms. Yvonne Borchert, Dr. Ricard Benoit, and Mr. Richard Furey, in their official capacities; his claims for injunctive relief against all of these Defendants in their individual capacities; his claims for injunctive relief against Warden Erfe, Dr. Lichtenstein, Ms. Borchert, and Dr. Benoit in their official capacities; all of his claims against the University of Connecticut Health Center, the Department of Correction and Correctional Managed Health Care; and all of his negligence claims will be **DISMISSED**.

Mr. Michalski's claims for injunctive relief under the Eighth Amendment against Commissioner Cook and Mr. Furey in their official capacities; and his claims for monetary relief under the Eighth Amendment against Warden Erfe, Commissioner Cook, Dr. Lichtenstein, Ms. Borchert, Dr. Benoit, and Mr. Furey in their individual capacities will proceed.

All other pending motions will be **DENIED** as moot.

---

[1] *See* Connecticut State Department of Correction, https://portal.ct.gov/DOC (last visited Nov. 13, 2019); Press Release, Office of Gov'r Ned Lamont, Gov. Elect Nominates Rollin Cook to Serve as Commissioner of the Department of Correction (Dec. 26, 2018), https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2018/Gov-Elect-Lamont-Nominates-Rollin-Cook-to-Serve-as-Commissioner-of-the-Department-of-Correction. Under Rule 25(d) of the Federal Rules of Civil Procedure, when a party in an official capacity resigns or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party, regardless of the party's failure to so move or to amend the case caption. Fed. R. Civ. P. 25(d). The Court may also order the substitution of a party at any time. See *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018); *Tanvir v. Tanzin*, 894 F.3d 449, 459 n.7 (2d Cir. 2018). Accordingly, the Court directs the Clerk of the Court to amend the docket and case caption to reflect that Rollin Cook, Commissioner of the Connecticut Department of Correction, is now the named Defendant in this action.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Allegations[2]

Mr. Michalski's dental issues allegedly stem partly from a root canal before his incarceration on tooth number 30. Fourth Am. Compl. ¶ 16. After the root canal, a dentist allegedly put a temporary crown[3] over what remained of tooth number 30. *Id.*

From April 2013 to April 2015, Mr. Michalski was incarcerated at Corrigan Correctional Institution ("Corrigan") and from August 2015 to March 2018, at Cheshire Correctional Institution ("Cheshire"). *Id.* ¶ 13. Since March 29, 2018, he has been incarcerated at Osborn Correctional Institution ("Osborn"). Notice of Change of Address, ECF No. 14 (Apr. 9, 2018).

While at Corrigan, Mr. Michalski allegedly saw a dentist due to severe pain in his tooth, which was identified as tooth number 31, right next to the tooth with the crown. *Id.* ¶ 14. On January 28, 2015, Mr. Michalski allegedly met with a dentist at Corrigan and learned that tooth number 31 could not be restored and needed to be extracted. *Id.* ¶ 15. During the extraction of tooth number 31, either the temporary crown on tooth number 30 allegedly became dislodged, Fourth Am. Compl. Ex. A, ECF No. 25-1 at 26 (DOC Dental Record, notes by Sara Tessler, D.D.S. (Jan. 28, 2015)); or allegedly the dentist intentionally removed the crown in order to extract tooth number 31, Fourth Am. Compl. ¶ 17. The dentist allegedly gave the crown to Mr. Michalski and indicated that she would call him back to the office to put the temporary crown back on tooth number 30. *Id.* ¶ 18. During a subsequent search of Mr. Michalski's cell, an officer allegedly discarded the temporary crown. *Id.* ¶ 19.

---

[2] All factual allegations are drawn from the Fourth Amended Complaint, ECF No. 25-1 (Sept. 30, 2019).

[3] Mr. Michalski refers to a cap having been placed on tooth number 30. It is clear from his dental record that it was a temporary crown. *Id.* Ex. A, ECF No. 25-1 at 26 (DOC Dental Record, notes by Sara Tessler, D.D.S. (Jan. 28, 2015)). The Court refers to the cap as a crown.

On February 19, 2015, the dentist allegedly fabricated a new temporary crown and cemented it over what remained of tooth number 30. *Id.* ¶ 20. Approximately two weeks later, the new temporary crown allegedly became dislodged. *Id.* ¶ 21. Mr. Michalski allegedly submitted multiple requests to have the new temporary crown applied to tooth number 30. *Id.* The dentist at Corrigan allegedly did not apply the crown prior to Mr. Michalski's transfer to Cheshire in August 2015. *Id.*

On August 17, 2015, the Connecticut Department of Correction ("DOC") allegedly transferred Mr. Michalski to Cheshire. *Id.* ¶ 75. He alleges that he never received an admission dental screening, as allegedly required under DOC policy. *Id.* ¶¶ 75-76.

Around May 2016, Mr. Michalski allegedly began to experience pain on the left and the right side of his mouth. *Id.* ¶ 22. He alleges that he submitted several requests to be seen by a dentist due to severe dental pain that was affecting his ability to chew and to sleep. *Id.* ¶¶ 22-23. His requests allegedly went unanswered. *Id.*

On September 3, 2016, Mr. Michalski allegedly submitted another request to be seen by a dentist due to severe dental pain. *Id.* ¶ 24. Yvonne Borchert, dental assistant at Cheshire, *id.* ¶ 7, allegedly responded to the request and indicated that Mr. Michalski was scheduled to be seen in the dental department, *id.* ¶ 24. On November 6, 2016, Mr. Michalski allegedly filed a request for a health services review to be seen by a dentist due to severe dental pain. *Id.* ¶ 25. Dr. Bruce Lichtenstein, the dentist at Cheshire, *id.* ¶ 6, allegedly denied the request and indicated that Mr. Michalski would be called to the dental department when it was his turn, *id.* ¶ 25.

Mr. Michalski allegedly continued to send requests to be seen by a dentist due to severe, throbbing pain, inability to chew or sleep, and cuts to his tongue caused by the sharp edge of the exposed tooth that needed a crown. *Id.* ¶ 27. He allegedly received no responses. *Id.*

On February 27, 2017, Dr. Lichtenstein and Ms. Borchert allegedly called Mr. Michalski to the dental department and took x-rays of his teeth. *Id.* ¶ 28. The x-rays allegedly revealed that nine of his teeth had cavities in addition to the exposed root canal. *Id.* Dr. Lichtenstein allegedly filled three cavities and informed Mr. Michalski that he could not see him again until September 2017. *Id.* ¶ 29. Mr. Michalski allegedly asked Dr. Lichtenstein to fill the remaining six cavities because he had waited so long to be seen by a dentist and was in pain, but Dr. Lichtenstein allegedly refused. *Id.* ¶ 30. Dr. Lichtenstein also allegedly refused to fabricate a crown for tooth number 30. *Id.* ¶ 31. He allegedly indicated that he had a policy of not placing crowns. *Id.*

On June 12, 2017, Dr. Lichtenstein allegedly filled three more cavities but refused to fill the last three cavities during that visit even though the cavities caused Mr. Michalski pain. *Id.* ¶¶ 33-36. Dr. Lichtenstein and Ms. Borchert also allegedly refused to fix his exposed root canal on that date. *Id.* ¶ 35. Ms. Borchert allegedly indicated that Mr. Michalski would be called back to have the last three cavities filled when it was his turn. *Id.*

On June 18, 2017, one of the fillings in Mr. Michalski's front canine tooth allegedly fell out. *Id.* ¶ 37. On July 10, 2017, someone from the dental department allegedly replaced the missing filling. *Id.* The new filling allegedly fell out again around August 2017. *Id.* ¶ 41. Mr. Michalski allegedly filed a request to have the filling replaced, but he received no response. *Id.* When he saw Ms. Borchert in the medical department, he allegedly mentioned the missing

filling, but she responded, "Oh, that's not that bad," and then allegedly rushed off before he could speak to her further. *Id.* ¶ 42.

On July 25, 2017, Mr. Michalski allegedly filed a health services review form about the need for a crown on tooth number 30 to cover his exposed root canal. *Id.* ¶ 38; Fourth Am. Compl. Ex. F, ECF No. 25-1 at 36 (DOC Health Services Review Form (submitted July 25, 2017)). The form allegedly was "Returned without Disposition" with the stated reason that "you have an appointment scheduled and will be called when it is your turn." Fourth Am. Compl. Ex. F, ECF No. 25-1 at 36 (DOC Health Services Review Form (returned Aug. 10, 2017).

On August 28, 2017, Mr. Michalski allegedly filed another health services review form regarding the missing filling from his front canine tooth. Fourth Am. Compl. Ex. F, ECF No. 25-1 at 37 (DOC Health Services Review Form (submitted Aug. 28, 2017). The health services review form allegedly was returned again without disposition, with the stated reason that "you have an upcoming appointment please be patient." *Id.* (returned Sept. 1, 2017).

On October 16, 2017, Mr. Michalski allegedly submitted another health services review form, regarding the denial of dental care. Fourth Am. Compl. ¶ 46. On November 7, 2017, and again on November 16, 2017, Mr. Michalski allegedly sent requests to Ms. Borchert regarding his severe dental pain and the lack of dental treatment. *Id.* ¶ 47-48. He allegedly attached a timeline to his November 7 request, detailing his dental issues and attempts at obtaining treatment. Fourth Am. Compl. Ex. I, ECF No. 25-1 at 44-48 (DOC Inmate Request Form (submitted Nov. 7, 2017)). Mr. Michalski allegedly filed another health services review form on November 30, 2017. Fourth Am. Compl. ¶ 49.

On December 1, 2017, Ms. Borchert allegedly came to Mr. Michalski's housing unit and informed him that he was scheduled to be seen in the dental department and that Dr. Lichtenstein had just returned from a month-long vacation. *Id.* ¶¶ 51-53.

On December 4, 2017, Mr. Michalski allegedly received responses from Mr. Borchert to two of his requests for dental treatment. *Id.* ¶ 54. She allegedly indicated that he had only had two small cavities left to be filled and did not mention anything about the exposed root canal. *Id.* The next day, Mr. Michalski allegedly wrote a request to Ms. Borchert regarding her December 1 visit to his unit and other issues. *Id.* ¶ 55. The reviewer—allegedly Ms. Borchert—returned the form the same day, stating:

> You are scheduled that is what I am required to do. You may send request[s] as often as you feel you want to they will all say you are scheduled.
> –This is getting out of control.–
> –Firm, Fair and Consist[e]nt– Thanks.

Fourth Am. Compl. Ex. O, ECF No. 25-1 at 55 (DOC Inmate Request Form (returned Dec. 5, 2017)).

"During all the back and forth with [Ms. Borchert] while trying to obtain dental care," another of Mr. Michalski's fillings allegedly fell out. Fourth Am. Compl. ¶ 56. In addition, further decay allegedly developed in the teeth with cavities that needed to be filled. *Id.*

On December 6, 2017, Mr. Michalski allegedly received a response to the health services review form submitted on October 16. *Id.* ¶ 60. This response allegedly returned his request with the disposition of "no further action" and the stated reason that Mr. Michalski had communicated in writing and verbally with the dental assistant on numerous occasions and that he had an upcoming appointment. Fourth Am. Compl. Ex. H, ECF No. 25-1 at 38 (DOC Health Services

Review Form (returned Dec. 6, 2017)). The reviewer allegedly indicated that Mr. Michalski only had two abrasions and one cavity left to be treated, which Mr. Michalski alleges is incorrect, and the reviewer allegedly did not mention the exposed root canal. *Id.*

Sometime during December 2017, Mr. Michalski allegedly had a court proceeding on a habeas petition he allegedly filed. *Id.* ¶ 61. At the December 2017 court hearing, Mr. Michalski alleges that Judge Levine stated, "If the DOC removed his crown, DOC owes him a crown!" *Id.* At that time, Mr. Michalski allegedly entered into an agreement for Dr. Richard Benoit, the Director of Dental Services for DOC, to place a crown on his tooth number 30. *Id.* Mr. Michalski alleges that he withdrew his habeas petition based on this alleged agreement. *Id.*

On December 15, 2017, a dentist allegedly filled Mr. Michalski's remaining cavities, and Ms. Borchert allegedly explained that Dr. Benoit would take care of his exposed root canal. *Id.* ¶ 62.

On January 25, 2018, the dental cement in tooth number 30 allegedly fell out exposing a steel screw which cut Mr. Michalski's tongue. *Id.* ¶ 63. A unit officer allegedly made Ms. Borchert aware of Mr. Michalski's condition, and she allegedly stated that Dr. Benoit was aware of the issue and that she would try to see Mr. Michalski that day. *Id.* ¶¶ 64-65. When Mr. Michalski's correctional treatment officer allegedly sent an e-mail to Dr. Lichtenstein about Mr. Michalski's condition, Dr. Lichtenstein allegedly responded by "stating that he 'encourages inmates to purchase motrin from commissary for dental discomfort.'" *Id.* ¶ 66. Mr. Michalski alleges that he could not chew on the exposed screw and that he "feared getting food lodged into the deep crater, which could become infected and ab[s]cessed." *Id.* ¶ 67.

On March 19, 2018, Dr. Benoit allegedly came to Cheshire to place a crown on Mr. Michalski's tooth. *Id.* ¶ 69. "However, he only filled the tooth back in and put a temporary cap on the tooth rather than a crown." *Id.* Dr. Benoit also allegedly made notes in Mr. Michalski's dental record, including "need crown per habeas court." Fourth Am. Compl. Ex. S, ECF No. 25-1 at 69 (DOC Dental Record, note by Richard Benoit (Mar. 9, 2018)).

On March 29, 2018, Mr. Michalski was allegedly transferred to the Osborn in Somers, Connecticut. Notice of Change of Address, ECF No. 14 (Apr. 9, 2018).

Richard Furey was allegedly the Health Services Administrator at Osborn "at all times relevant to this complaint." Fourth Am. Compl. ¶ 12. Mr. Furey, who "has the authority and obligation to ensure adequate treatment of inmates at [Osborn]," allegedly "had the knowledge that the [P]laintiff entered DOC with a crown which was removed by DOC staff, and denied to be replaced by DOC staff" and "had knowledge of the agreement at Habeas Court about the crown." *Id.* ¶ 105. At some point, Mr. Michalski allegedly filed a medical grievance regarding his tooth number 30 needing to be crowned. *Id.* Mr. Furey allegedly answered his grievance by stating that "DOC follows Medicaid guidelines and Medicaid doesn't pay for crowns." *Id.*

### B.    Procedural History

On December 13, 2017, Mr. Michalski, then incarcerated at Cheshire, sued five individuals associated with the DOC in their individual and official capacities: Scott Erfe, Warden at Cheshire; Scott Semple, then DOC Commissioner; Dr. Bruce Lichtenstein, a dentist employed by Correctional Managed Health Care ("CMHC") and stationed at Cheshire who treated Mr. Michalski; Stephanie McClain, Medical Grievance Coordinator employed by CMHC and stationed at Cheshire; and Yvonne, a dental assistant employed by CMHC and stationed at

Cheshire who treated Mr. Michalski and whose last name was unknown to Mr. Michalski at the time. Complaint, ECF No. 1 (Dec. 13, 2017). Mr. Michalski made claims of deliberate indifference to his serious medical needs in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment against all Defendants. *Id.* ¶ 73-78.

On January 29, 2018, Mr. Michalski, proceeding *pro se*, filed his first motion to amend/correct the Complaint to correct and add information. Mot. to Amend/Correct, ECF No. 7 (Jan. 29, 2018).

On February 23, 2018, the Court granted the motion to amend/correct. Order Granting Mot. to Amend/Correct, ECF No. 9 (Feb. 23, 2018). The First Amended Complaint was docketed on the same day. Am. Compl., ECF No. 10 (Feb. 23, 2018).

On March 2, 2018, Mr. Michalski moved to withdraw all claims against Ms. McClain. Mot. to Withdraw, ECF No. 11 (Mar. 2, 2018).

On March 13, 2018, construing this motion as one for voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1), the Court granted the motion and dismissed Ms. McClain from the case. Order Granting Mot. to Withdraw, ECF No. 12 (Mar. 13, 2018).

On March 14, 2018, Mr. Michalski filed a motion for judicial review, asking the Court to issue an Initial Review Order and commence service on the Defendants. Mot. for Judicial Review, ECF No. 13 (Mar. 14, 2018).

On April 9, 2018, Mr. Michalski notified the Court that he had been transferred to Osborn on March 29, 2018. Notice of Change of Address, ECF No. 14 (Apr. 9, 2018).

On May 24, 2018, Mr. Michalski filed a "motion to articulate," again asking the Court to issue an Initial Review Order. Mot. to Articulate, ECF No. 15 (May 24, 2018).

On August 17, 2018, the Court denied Mr. Michalski's motions for the Court to issue an Initial Review Order and directed Mr. Michalski to file a Second Amended Complaint to correct deficiencies in the First Amended Complaint. Order, ECF No. 16 (Aug. 17, 2018).

On August 29, 2018, Mr. Michalski filed his Second Amended Complaint listing all four remaining Defendants in the caption and including descriptions of all Defendants. Second Am. Compl., ECF No. 17 (Aug. 29, 2018).

On March 25, 2019, Mr. Michalski filed another motion for judicial review, asking the Court to issue an Initial Review Order. Mot. for Judicial Review, ECF No. 18 (Mar. 25, 2019).

On April 18, 2019, Mr. Michalski filed a new motion to amend/correct the amended complaint. Mot. to Amend/Correct, ECF No. 19 (Apr. 18, 2019). The Third Amended Complaint sought to add factual allegations and claims of negligence under Connecticut state law, and to add CMHC, the DOC, and the University of Connecticut Health Center ("UConn Health") as Defendants. *Id*; Third Am. Compl., ECF No. 19-1 (Apr. 18, 2019).

On May 29, 2019, Mr. Michalski moved for a temporary restraining order ("TRO") and preliminary injunction directing Dr. Lichtenstein and Dental Assistant Yvonne (her last name still unknown at the time to Mr. Michalski) to arrange for an examination and a plan of treatment by a qualified dentist who is not associated with UConn Health. Mot. TRO & Prelim. Inj.

On June 24, 2019, Mr. Michalski moved for judgment on the pleadings on the motion for a temporary restraining order and preliminary injunction for the Defendants' failure to respond to his motion. Mot. for J. on Pleadings, ECF No. 21 (June 24, 2019).

On July 5, 2019, Mr. Michalski filed another motion to amend/correct the amended complaint as well as another motion for initial review. Mot. to Amend/Correct, ECF No. 22 (July 5, 2019); Mot. for Initial Review, ECF No. 23 (July 5, 2019).

On September 30, 2019, Mr. Michalski filed a motion to enter his Fourth Amended Complaint on the docket and attached the amended complaint, seeking to add Dr. Richard Benoit, Director of Dental Services for the DOC, and Richard Furey, the Health Services Administrator for OCI. Mot. to Amend/Correct, ECF No. 25 (Sept. 30, 2019); Fourth Am. Compl., ECF No. 25-1 (Sept. 30, 2019). Mr. Michalski also added Dental Assistant Yvonne's last name, having learned it since filing his last motion to amend the amended complaint: Yvonne Borchert. Fourth Am. Compl. ¶ 6.

On the same day, Mr. Michalski filed a motion asking the Court to exercise supplemental jurisdiction over his state law negligence claim. Mot. for Supp. Jurisdiction, ECF No. 26 (Sept. 30, 2019).

On September 30, 2019, Mr. Michalski also filed a memorandum of law in support of his May 29, 2019, motion for a temporary restraining order and preliminary injunction, along with proposed order text and several supporting exhibits. Mem. in Support of Mot. for TRO/PI, ECF No. 27 (Sept. 30, 2019) ("Mem. TRO & Prelim. Inj."); Affidavit of Marco A. Michalski, ECF No. 27-1 (Sept. 30, 2019); Text of Proposed Order, ECF No. 27-2 (Sept. 30, 2019).

On October 30, 2019, Mr. Michalski filed a motion for judgment, requesting an Initial Review Order and judgment on his pending motions. Mot. for J., ECF No. 28 (Oct. 30, 2019).

Mr. Michalski now has the following motions pending before the Court: motions for leave to file a Third and Fourth Amended Complaint, ECF Nos. 19, 22, and 25; motions for

review, ECF Nos. 18, 23, and 28; a motion for supplemental jurisdiction, ECF No. 26; a motion

for a TRO and preliminary injunction, ECF No. 20; and a motion for judgment on the pleadings

on the TRO and preliminary injunction, ECF No. 21.

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints

against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is

frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks

monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see

also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner

Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory);

*Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district

court screen a civil complaint brought by a prisoner against a governmental entity or its agents

and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails

to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short

and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P.

8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon

which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the

speculative level" and assert a cause of action with enough heft to show entitlement to relief and

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555,

570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III. DISCUSSION

### A.     Motions for Leave to File the Third and Fourth Amended Complaints

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(2). "In all other cases, a party may amend its pleading only with the opposing party's written

consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

In his motion to file a Third Amended Complaint, Mr. Michalski seeks to add factual allegations and to add CMHC, the DOC, and UConn Health as Defendants. Third Am. Compl. Mr. Michalski also seeks to bring claims of negligence against Warden Erfe, the Commissioner, the DOC, CMHC, and UConn Health. *Id.* ¶ 107.

In his proposed Fourth Amended Complaint, Mr. Michalski seeks to add two more Defendants—Dr. Richard Benoit, Director of Dental Services for the DOC, and Richard Furey, the Health Services Administrator for OCI—and to add Yvonne Borchert's last name to the case. Fourth Am. Compl. He continues to make claims of deliberate indifference against all Defendants and claims of negligence against Warden Erfe, the Commissioner, the DOC, CMHC, and UConn Health. Fourth Am. Compl. ¶¶ 109-115.

Because the Court had not yet issued an Initial Review Order and the Defendants have not yet been served, in the interest of justice, the Court **GRANTS** Mr. Michalski's motion for leave to file a Fourth Amended Complaint, ECF No. 25. The Clerk is directed to docket the Fourth Amended Complaint attached as ECF No. 25-1 to the September 30, 2019 motion to amend.

Accordingly, the earlier motions to amend, ECF Nos. 19 and 22, are **DENIED as moot**.

### B.    Motions for Review

Mr. Michalski filed motions seeking review of his second, third, and fourth amended complaints and of his motion for temporary restraining order and preliminary injunction.

Because the Court is now providing an Initial Review Order of the Fourth Amended Complaint and an Order addressing Mr. Michalski's motion for a temporary restraining order, all three motions for review, ECF Nos. 18, 23, and 28, are **DENIED** as moot.

### C. Initial Review Order as to Fourth Amended Complaint

In the Fourth Amended Complaint, Mr. Michalski claims that all of the Defendants violated his rights under the Eighth Amendment because they were deliberately indifferent to his allegedly serious dental condition over a two to three-year period during his confinement at Cheshire and since his transfer to Osborn. Fourth Am. Compl. ¶¶ 109-115. He also brings claims of negligence against Warden Erfe, the Commissioner, the DOC, CMHC, and UConn Health. Fourth Am. Compl. ¶ 113. Mr. Michalski seeks injunctive relief as well as compensatory and punitive damages. *Id.* at 23.

These claims are all initially reviewed below.

### 1. Eighth Amendment Claims under 42 U.S.C. § 1983

The Court construes Mr. Michalski's claims as though they were brought under 42 U.S.C. § 1983, which provides a "remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Hafer v. Melo*, 502 U.S. 21, 27 (1991); (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)).

To state a claim under Section 1983, a plaintiff must allege facts showing that the defendant, a person acting under color of state law, deprived him of a federally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982).

### a. Relief Available Under § 1983

In suits for monetary relief, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Hafer*, 502 U.S. at 27 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). In suits for injunctive relief against a state agency under Section 1983, a plaintiff must "follow the requirement, established in *Ex Parte Young*," to "name as defendant a state official rather than the state or a state agency directly." *Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991) (dismissing claims for injunctive relief brought by a state DOC employee against the DOC) (citing *Ex Parte Young*, 209 U.S. 123 (1908)); *see also Alden v. Maine*, 527 U.S. 706, 756 (1999) (recognizing that only arms of the State can assert the State's immunity); *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 360 (2006) (noting that Virginia institutions of higher education are considered arms of the state entitled to sovereign immunity).

A state agency, acting as an arm of the state, therefore may not be named as a defendant in suits under Section 1983 for either injunctive or monetary relief; and state officials sued in their official capacity may not be sued for damages under Section 1983, but may be sued for injunctive relief.

By contrast, a plaintiff may bring a claim for monetary damages against state officers in their personal capacities under § 1983. *Hafer*, 502 U.S. at 27 (citing *Will*, 491 U.S. at 71) ("[O]fficers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'").

###### i.    Institutional Defendants

Mr. Michalski seeks relief under Section 1983 against the following institutional

Defendants: the Department of Correction, the University of Connecticut Health Center, and

Correctional Managed Health Care. None of these Defendants, however, are proper parties to

this lawsuit.

The State of Connecticut Department of Correction is a department within the executive

branch of the State of Connecticut. *See* Conn. Gen. Stat. § 4-38c ("There shall be within the

executive branch of state government the following departments . . . Department of Correction

. . . ."). As an entity within the executive branch of the State of Connecticut, the Department of

Correction is not a person subject to liability under Section 1983. *See El-Massri v. New Haven*

*Corr. Ctr.*, No. 3:18-cv-1249 (CSH), 2018 WL 4604308, at *11 (D. Conn. Sept. 25, 2018) ("A

correctional institution is not a "person" within the meaning of 42 U.S.C. § 1983 so there is no

arguable legal basis for proceeding with a § 1983 claim against [New Haven Correctional

Center]"); *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 288 (D. Conn. 2008) (stating that the

"Department of Corrections is an arm of the State of Connecticut" (citation omitted)).

The University of Connecticut is a public state university, and neither it nor its Health

Center is a person within the meaning of Section 1983. *See Gaby v. Bd. of Trustees of Comty.*

*Tech. Colls.*, 348 F.3d 62, 63 (2d Cir. 2003) (per curiam) (noting decisions holding that state

universities and their boards of trustees are not persons within the meaning of Section 1983);

*Kaminski v. Oniyuke*, No. 3:19-cv-58 (SRU), 2019 WL 1877075, at *2 (D. Conn. Apr. 26, 2019)

("The UConn Health Center is not a person subject to liability under section 1983." (citations

omitted)); *Jain v. Univ. of Conn.*, No. 3:08-cv-489 (WWE), 2009 WL 179811, at *2 (D. Conn.

Jan. 22, 2009) ("Because the University of Connecticut is an arm of the State of Connecticut, it is not a person within the meaning of [S]ection 1983. Plaintiff cannot, therefore, assert claims against the University of Connecticut pursuant to [S]ection 1983.").

Correctional Managed Health Care is a division of the University of Connecticut Health Center. *See Jolly v. Corr. Managed Health Care*, Case No. 3:04-cv-1582 (RNC), 2009 WL 233667, at *3 (D. Conn. Jan. 30, 2009) ("CMHC is a division of a state agency, the University of Connecticut Health Center." (citation omitted)). "As the University of Connecticut Health Center is not considered a person and, therefore, is not subject to suit under section 1983, Correctional Managed Health Care, a division of the Health Center, is not a person within the meaning of section 1983." *Ferla v. Corr. Managed Health Care*, No. 3:15-cv-1303 (MPS), 2015 WL 5826812, at *2 (D. Conn. Oct. 2, 2015).

Accordingly, all claims for relief against the Department of Correction, UConn Health, and the Correctional Managed Health Care are dismissed. *See* 28 U.S.C. § 1915A(b)(1) (in an initial review of a civil action by an incarcerated person, "the court shall . . . dismiss . . . any portion of the complaint, if the complaint—(1) . . . fails to state a claim up on which relief may be granted.").

### ii.    Individual Defendants

The Supreme Court has held that officers of the state sued for damages in their official capacity are not "persons" under § 1983. *Hafer*, 502 U.S. at 27 (citing *Will*, 491 U.S. at 71). However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated

as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

Additionally, as stated above, a plaintiff may bring a claim for damages against state officers in their individual capacity under § 1983. *Id.* (citing *Will*, 491 U.S. at 71) ("[O]fficers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'").

Mr. Michalski sues all of the individual Defendants—Warden Erfe, Commissioner Cook, Dr. Lichtenstein, Ms. Borchert, Dr. Benoit, and Mr. Furey—in both their individual and official capacities for compensatory and punitive damages as well as injunctive relief.

To the extent that Mr. Michalski seeks monetary damages from these Defendants in their official capacities for violations of his rights under the Eighth Amendment, he cannot. Because these defendants are not "persons" under § 1983, Mr. Michalski's claims for damages against them in their official capacities must be dismissed. *See* 28 U.S.C. § 1915A(b)(2) (in an initial review of a civil action by an incarcerated person, "the court shall . . . dismiss . . . any portion of the complaint, if the complaint—(2) seeks monetary relief from a defendant who is immune from such relief.").

Most of Mr. Michalski's allegations involve Defendants who were at Cheshire and involve conduct that took place at Cheshire. Mr. Michalski, however, is no longer at Cheshire, having been transferred to Osborn on March 29, 2018. Notice of Change of Address. To the extent that Mr. Michalski seeks injunctive relief, this relief is only available against Defendants who are involved with his care at his current institution. *See Salahuddin v Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (recognizing that "an inmate's transfer from a prison facility generally moots

claims for declaratory and injunctive relief against officials of that facility."); *see also Sossamon v. Texas*, 563 U.S. 277, 304 (2011) (noting that "[a] number of . . . suits seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place prior to adjudication on the merits").

Mr. Michalski's claims for injunctive relief against the Defendants at Cheshire—Warden Erfe, Dr. Lichtenstein, Ms. Borchert, and Dr. Benoit—therefore will be dismissed. *See* 28 U.S.C. § 1915A(b)(1) (in an initial review of a civil action by an incarcerated person, "the court shall . . . dismiss . . . any portion of the complaint, if the complaint—(1) . . . fails to state a claim upon which relief may be granted.").

Additionally, because Mr. Michalski is seeking injunctive relief from state officials in their official capacities, his claims for injunctive relief against those Defendants in their individual capacities will be dismissed. *Cf.* Martin A. Schwartz, <u>Section 1983 Litigation: Claims and Defenses</u> § 8.01[C][2] (4th ed. 2016-1 Supp.) ("When a § 1983 claimant seeks prospective relief compelling a state to comply with federal law, in order to come within the doctrine of *Ex Parte Young* the claimant must sue the appropriate state official in her official capacity." (citing *Ex Parte Young*, 209 U.S. 123)).

Mr. Michalski's claims for injunctive relief will proceed only against Mr. Furey, the one Defendant working at Mr. Michalski's current facility, and DOC Commissioner Cook, and only in their official capacities.

The Court now will review whether Mr. Michalski's claims under Section 1983 for damages relief against Warden Erfe, Dr. Lichtenstein, Ms. Borchert, Dr. Benoit, and Mr. Furey

in their individual capacities, and his claims for injunctive relief against Commissioner Cook and Mr. Furey in their individual and official capacities, can proceed.

### b. Deliberate Indifference under the Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, which includes punishments that "involve the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials, to "ensure that inmates receive adequate food, clothing, shelter and medical care" and are confined in "safe[]" living conditions. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted).

The Supreme Court and the Second Circuit have held that deliberate indifference by prison officials to a prisoner's serious medical or dental needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance*, 143 F.3d at 702. To state a Section 1983 claim for deliberate indifference to a serious medical or dental need, a plaintiff must meet a two-pronged test, requiring an analysis of the claim both objectively and subjectively.

Under the objective prong, the inmate's medical or dental need or condition must be "a serious one." *Brock v Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Factors relevant to the seriousness of a medical or dental condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects

an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance*,

143 F.3d at 702 (internal quotation marks and citations omitted).

Under the subjective prong, the action or inaction of a prison official, medical staff

member, or dental provider must have constituted recklessness. *See Salahuddin*, 467 F.3d at 279-

80. The official must have been actually aware of a substantial risk that the inmate would suffer

serious harm as a result of his or her actions or inactions. *Id.* at 280. Mere negligent conduct does

not constitute deliberate indifference. *See id.* ("[R]ecklessness entails more than mere

negligence; the risk of harm must be substantial and the official's actions more than merely

negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (stating that medical

malpractice alone does not amount to deliberate indifference).

Several factors are considered when determining whether a plaintiff's medical or dental

condition is a serious medical condition, such as

> the pain suffered by the plaintiff, *see Fields v. Gander*, 734 F.2d
> 1313, 1314–15 (8th Cir. 1984) ("severe pain" due to infected
> tooth), the deterioration of the teeth due to a lack of treatment, *see*
> *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (three-week delay
> in dental treatment aggravated problem), or the inability to engage
> in normal activities, *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th
> Cir. 1989) (plaintiff complained that he was unable to eat
> properly); *cf. Dean v. Coughlin*, 623 F. Supp. 392, 404
> (S.D.N.Y.1985) (holding that "dental needs—for fillings, crowns,
> and the like—are serious medical needs as the law defines that
> term"), *vacated on other grounds*, 804 F.2d 207 (2d Cir. 1986).

*Chance*, 143 F.3d at 703; *see also Davis v. Falcone*, No. 3:16-cv-1117 (JAM), 2016 WL

3919801, at *2 (D. Conn. July 18, 2016) (permitting a plaintiff to proceed on claims of deliberate

indifference where he alleged that "he was in severe pain for eight months before getting an

appointment," that "the pain prevented him from sleeping through the night," and that he had a "hole in his mouth").

Mr. Michalski alleges that, since May 2016, he has submitted multiple requests to be seen by a dentist at Cheshire, due to "severe" and "debilitating dental pain" that made it difficult for him to sleep or chew. Fourth Am. Compl. ¶ 22-27. He alleges that he was not seen until February 27, 2017, ten months after his first request. *Id.* ¶ 28. At that time, Dr. Lichtenstein and Ms. Borchert allegedly discovered nine cavities and an exposed root canal that required a crown, but they only filled three cavities. *Id.* ¶ 28-29. They allegedly told Mr. Michalski that he would not be seen again until September 2017—seven months later. *Id.* ¶ 29.

Mr. Michalski further alleges that the failure to treat these conditions in a timely or proper manner caused him pain, gashes to his tongue from the exposed root canal, migraine headaches, and interference with his ability to eat and sleep. *Id.* ¶ 88. In addition, the prolonged lack of treatment allegedly caused him to experience mental anguish. *Id.* ¶ 106.

Mr. Michalski thus has plausibly alleged having suffered from a serious medical condition, satisfying the objective prong of the deliberate indifference inquiry. *See Chance*, 143 F.3d at 703 (finding a serious dental condition where the plaintiff "suffered extreme pain, his deteriorated teeth, and he has been unable to eat properly").

The Court now will apply the subjective prong to each Defendant.

### i. Dr. Lichtenstein, Ms. Borchert, Dr. Benoit, and Mr. Furey

Mr. Michalski alleges that Dr. Lichtenstein and Ms. Borchert were deliberately indifferent to the pain caused by his untreated cavities and exposed tooth with a root canal. Fourth Am. Compl. ¶¶ 109-111. Specifically, Mr. Michalski alleges that Dr. Lichtenstein and

Ms. Borchert refused to replace the crown on Mr. Michalski's exposed root canal, despite having the means to replace it, putting him at risk for further damage and causing him pain, and that they knew their refusal would result in that damage. *Id.* ¶ 109.

These Defendants, allegedly knowing that Mr. Michalski was in severe pain, "did not even see, treat or examine the [P]laintiff for nine (9) months despite his numerous requests and grievances;" and they allegedly knew that their refusal to timely treat him could cause "damage such as further deterioration of the teeth, infections, etc." *Id.* ¶ 110. Mr. Michalski also claims that Dr. Lichtenstein and Ms. Borchert's denial of dental care violated DOC policy as outlined in Administrative Directive 8.4. *Id.* ¶ 111; Fourth Am. Compl. Ex. L, ECF No. 25-1 at 48 (DOC Admin. Directive 8.4: Dental Services (May 1, 2007)).

Mr. Michalski also alleges that Dr. Lichtenstein and Ms. Borchert denied and delayed him dental care while he was at Cheshire, refused to fabricate and apply a crown to tooth number 30, and failed to treat his many cavities in a timely manner despite his repeated complaints of severe pain and difficulty eating and sleeping due to dental decay. Fourth Am. Compl. ¶¶ 24-60. Mr. Michalski contends that the actions and inactions of Dr. Lichtenstein and Ms. Borchert constituted a deliberate or reckless disregard for his dental health. *Id.* ¶¶ 109-111.

Mr. Michalski claims that Dr. Benoit was deliberately indifferent to his serious dental condition by failing to place a permanent crown on the Plaintiff's tooth number 30 after agreeing to do so at habeas court in December 2017 and knowing that his failure "would result in further damage to the tooth." *Id.* ¶ 114.

Mr. Michalski also claims that Mr. Furey's denial of care constituted deliberate indifference. *Id.* ¶ 115. Mr. Michalski alleges that after he was transferred to Osborn, Mr. Furey

denied a grievance that Mr. Michalski filed regarding the tooth that needed a crown despite knowing that Mr. Michalski was supposed to have a crown placed by the DOC. *Id.* ¶ 105.

Mr. Michalski thus has plausibly alleged that Dr. Lichtenstein, Ms. Borchert, Dr. Benoit, and Mr. Furey all were aware of a substantial risk that Mr. Michalski would suffer serious harm but failed to treat him. *Salahuddin*, 467 F.3d at 279-80. Mr. Michalski therefore has adequately pled that Dr. Lichtenstein, Ms. Borchert, Dr. Benoit, and Mr. Furey, all were deliberately indifferent to Mr. Michalski's serious dental needs.

Accordingly, Mr. Michalski's Eighth Amendment claims for monetary relief against these Defendants in their individual capacities will proceed, and the claim for injunctive relief against Mr. Furey in his official capacity will proceed, but all claims against Dr. Lichtenstein, Ms. Borchert, and Dr. Benoit in their official capacities will be **DISMISSED**.

### ii.     Warden Erfe and Commissioner Cook

 "A prison official cannot be personally liable under § 1983 on the basis of *respondeat superior* or simply because he is atop the prison hierarchy. Rather, a prison official must have some degree of personal involvement in an alleged constitutional deprivation to be personally liable." *Lewis v. Cunningham*, 483 F. App'x 617, 618–19 (2d Cir. 2012) (citing *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995)).

> A plaintiff who sues a supervisory official in his individual capacity for monetary damages under section 1983 must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official "demonstrate[d]

> gross negligence or deliberate indifference to the constitutional
> rights of [the] inmate[ ] by failing to act on information indicating
> that unconstitutional practices [we]re taking place."

*El-Massri*, 2018 WL 4604308, at *10 (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

Mr. Michalski alleges that "for a period of at least (6) six months to a year" between May 2016 and February 2017, Warden Erfe and the Commissioner did not assign a dentist or a sufficient number of dental staff members to Cheshire, and that this was the reason Mr. Michalski's multiple dental requests went unanswered. Fourth Am. Compl. at ¶ 58. Mr. Michalski also claims that these Defendants failed to enforce the DOC's own Administrative Directives pertaining to dental care, and failed to maintain adequate medical staff, thereby causing his injuries. *Id.* ¶ 112. Mr. Michalski alleges that "[t]he failure of [Warden Erfe and the Commissioner] . . . to maintain adequate medical staff, with the knowledge they were understaffed, and with the knowledge that [this failure] would result in the inevitable pain and suffering of the inmate population" constitutes deliberate indifference to the Plaintiff's serious dental needs in violation of the Eighth Amendment. *Id.* ¶ 113.

At this initial review stage, these alleged facts are sufficient to state a claim that Warden Erfe and the Commissioner were "personally involved" in Mr. Michalski's claimed constitutional deprivation because the Warden and the Commissioner created or perpetuated a policy or custom under which unconstitutional practices occurred.

Accordingly, Mr. Michalski's Eighth Amendment claims for monetary relief against these Defendants in their individual capacities will proceed, and the claims for injunctive relief against Commissioner Cook in his official capacity will proceed. The claims against Warden Erfe in his official capacity will be **DISMISSED**.

### 2. Negligence Claims

Connecticut law provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165. Connecticut courts note that "wanton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Martin v. Brady*, 261 Conn. 372, 379, 802 A.2d 814, 819 (2002) (internal quotation marks and citation omitted). State employees thus are not "personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003).

Mr. Michalski claims that the actions and inactions of the Warden, the Commissioner, the Department of Correction, UConn Health, the Correctional Managed Health Care resulted in viable negligence claims. Fourth Am. Compl. ¶ 13.

The Court disagrees.

Because Mr. Michalski's negligence claims for monetary damages against Warden Erfe and Commissioner Cook in their individual capacities are barred by statutory immunity under Conn. Gen. Stat. § 4-165, those claims will be **DISMISSED**. *See* 28 U.S.C. § 1915A(b)(2).

Mr. Michalski also sues Warden Erfe and Commissioner Cook in their official capacities, in addition to suing the Department of Correction, UConn Health, and Correctional Managed Health Care for negligence.

"The doctrine of sovereign immunity provides that the state is immune from suit unless it consents to be sued." *Jacques v. Conn. Dep't of Corr.*, No. KNL-cv-175015515-S, 2017 WL

6947808, at *3 (Conn. Super. Ct. Dec. 12, 2017) (citing *Miller*, 265 Conn. at 313). Sovereign immunity also bars suits seeking monetary damages against a state official in his or her official capacity. *See Miller*, 265 Conn. at 313 ("[A] suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state.") (internal quotation marks and citation omitted)); *see also Hultman v. Blumenthal*, 67 Conn. App. 613, 620 (2002) ("The doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from the performance of their duty."), *cert. denied*, 259 Conn. 929 (2002).

There are three exceptions to the bar on suits against the state and state officials:

(1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity; (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights; and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority.

*Columbia Air Servs., Inc. v. Dep't of Transp.*, 293 Conn. 342, 349 (2009) (internal citations omitted).

Absent any of these exceptions, a plaintiff is required to "seek permission from the Connecticut Claims Commissioner before suing the state or any of its officials in their official capacities." *Jacques*, 2017 WL 6947808, at *3 (dismissing an incarcerated individual's claims for monetary damages against the DOC, UConn Health, and the Warden acting in his official capacity because the claims were not first brought to the Connecticut Claims Commissioner). A plaintiff must "present . . . [the] claim against the state" to the State Claims Commissioner who may authorize an action against the state or a state official. Conn. Gen. Stat. § 4-160(a), 4-165(a); *see also Columbia Air Servs., Inc.*, 293 Conn. at 352 (dismissing claims of monetary damages against the state for breach of contract because the plaintiff had not exhausted the relief

available through the Connecticut Claims Commissioner as required by Conn. Gen. Stat. § 4-160(a)). Thus, when filing a lawsuit, the plaintiff must allege that he or she sought "authorization and the date on which it was granted." Conn. Gen. Stat. § 4-160(c).

Mr. Michalski has not asserted that he filed any claims with the Connecticut Claims Commissioner or that he received the required authorization to file suit against the State and its officials. Furthermore, there is no allegation that the Defendants waived their sovereign immunity to be sued as to any negligence claims. As a result, Mr. Michalski's claims for monetary damages against the Department of Correction, UConn Health, Correctional Managed Health Care, and Warden Erfe and Commissioner Cook in their official capacities, are barred by sovereign immunity.

Mr. Michalski's claims for injunctive relief against Warden Erfe and Commissioner Cook in their official capacities are also barred by sovereign immunity. The third exception listed above to the doctrine of sovereign immunity for claims asserted against state officers in their official capacities is "when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." *Columbia Air Servs., Inc.*, 293 Conn. at 352. Mr. Michalski does not allege that Warden Erfe's or the Commissioner's allegedly negligent actions or omissions were committed to promote an illegal purpose in excess of those officers' statutory authority. *See Morales-Rojas v. Ruiz*, No. 3:17-cv-1434(MPS), 2018 WL 401531, at *5 (D. Conn. Jan. 12, 2018) (dismissing, in an initial review order, an incarcerated plaintiff's negligence claims for injunctive relief against a physician who treated him in the prison). To the extent that it is

asserted against Warden Erfe and Commissioner Cook for their allegedly negligent conduct, the request for injunctive relief should be dismissed. See 28 U.S.C. § 1915A(b)(2).

Accordingly, all of Mr. Michalski's negligence claims will be **DISMISSED**.

### D. Motion for Temporary Restraining Order and Preliminary Injunction

On May 29, 2019, Mr. Michalski moved for a temporary restraining order and preliminary injunction directing Dr. Lichtenstein and Ms. Borchert to arrange for an examination and a plan of treatment by a qualified dentist who is not associated with UConn Health. Mot. TRO & Prelim. Inj. ¶ 23.

On September 30, 2019, Mr. Michalski filed a memorandum in support of his motion for a temporary restraining order and preliminary injunction, along with an affidavit and proposed order. Mem. TRO & Prelim. Inj.; Affidavit of Marco A. Michalski, ECF No. 27-1 (Sept. 30, 2019); Text of Proposed Order, ECF No. 27-2 (Sept. 30, 2019). His proposed order seeks to enjoin Dr. Benoit in addition to the other two Defendants. Text of Proposed Order. Because it is clear from his proposed order that Mr. Michalski seeks an injunction addressing a current dental care provider, Dr. Benoit, the Court liberally construes Mr. Michalski's motion to apply to all three Defendants: Dr. Lichtenstein, Ms. Borchert, and Dr. Benoit. *See Sykes*, 723 F.3d at 403 ("*Pro se* complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest." (quoting *Triestman*, 470 F.3d at 474) (internal quotation marks omitted)).

But because Dr. Lichtenstein, Ms. Borchert, and Dr. Benoit are all at Cheshire, and Mr. Michalski is no longer incarcerated at Cheshire, the motion for a temporary restraining order and preliminary injunction therefore is **DENIED** as moot. *See Salahuddin*, 467 F.3d at 272

(recognizing that "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

**E.      Motion for Judgment on the Pleadings**

Mr. Michalski seeks an order granting the relief sought in his motion for temporary restraining order and preliminary injunction because the Defendants did not respond. Mot. TRO & Prelim. Inj. Defendants, however, have not been served with or received a copy of the motion seeking injunctive relief. Thus, the Defendants were not in default for failing to respond.

The Court has now addressed Mr. Michalski's motion for temporary restraining order and for preliminary injunctive relief. Mr. Michalski's motion seeking judgment or an order in his favor on the motion for injunctive relief therefore is **DENIED**.

**ORDERS**

The Court enters the following orders:

(1)     The Court directs the Clerk of the Court to amend the docket and case caption to reflect that Rollin Cook, Commissioner of the Connecticut Department of Correction, is now the named Defendant in this action.

(2)     The Motion to Amend/Correct, [**ECF No. 25**], is **GRANTED**. The Clerk shall docket the Fourth Amended Complaint, [**ECF No. 25-1**], attached to the motion as the Supplemental Complaint. The earlier Motion to Amend/Correct, [**ECF No. 19**], and the Motion to Enter Amended Complaint on Docket, [**ECF No. 22**], are **DENIED** as moot. The Motion for a Temporary Restraining Order and Preliminary Injunction, [**ECF No. 20**], is **DENIED** as moot. In light of this Order, the motions for review, [**ECF Nos. 18, 23, and 28**], and the motion for supplemental jurisdiction, [**ECF No. 26**], are **DENIED** as moot. The Motion for Judgment on the Pleadings, [**ECF No. 21**], is also **DENIED**.

All claims asserted in the Fourth Amended Complaint against UConn Health, the Department of Correction, and Correctional Managed Health Care are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The Eighth Amendment claims for monetary damages asserted in the Fourth Amended Complaint against Warden Erfe, Commissioner Cook, Dr. Lichtenstein, Ms. Borchert, Dr. Benoit, and Mr. Furey in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(2). The Eighth Amendment Claims for injunctive relief against Warden Erfe, Dr. Lichtenstein, Ms. Borchert, and Dr. Benoit in their individual and official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The Eighth Amendment Claims for injunctive relief against Commissioner Cook and Mr. Furey in their individual capacities are **DISMISSED**

under 28 U.S.C. § 1915A(b)(1). All of Mr. Michalski's negligence claims are **DISMISSED** under 28 U.S.C. § 1915A(b)(1) and (2).

The Eighth Amendment claims of deliberate indifference to dental needs will proceed against Commissioner Scott Cook, Warden Scott Erfe, Dr. Bruce Lichtenstein, Yvonne Borchert, Dr. Richard Benoit, and Mr. Richard Furey in their individual capacities for monetary relief. The Eighth Amendment claims will proceed against Commissioner Cook and Mr. Furey in their official capacities for injunctive relief.

(3)    By **December 6, 2019**, the Clerk of Court shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint and this ruling and order on Defendants Warden Scott Erfe, Commissioner Scott Cook, Dr. Bruce Lichtenstein, Ms. Yvonne Borchert, Dr. Richard Benoit, and Mr. Richard Furey, by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(4)    By **December 6, 2019**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for each of the following Defendants: Warden Scott Erfe, Commissioner Scott Cook, Dr. Bruce Lichtenstein, Ms. Yvonne Borchert, Dr. Richard Benoit, and Mr. Richard Furey, and mail a copy of the Fourth Amended Complaint, this ruling and order and a waiver of service of process request packet to each Defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of each request. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person

service by the U.S. Marshals Service and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(5)      Defendants shall file their response to the Fourth Amended Complaint, either an answer or motion to dismiss, by **February 7, 2020**. If the Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(6)      Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **May 15, 2020**. Discovery requests need not be filed with the court.

(7)      All motions for summary judgment shall be filed by **June 19, 2020**.

(8)      The Pro Se Prisoner Litigation Office shall send a courtesy copy of the Fourth Amended Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(9)      The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

SO ORDERED at Bridgeport, Connecticut this 13th day of November 2019.

_____
Victor A. Bolden
United States District Judge